# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROBERT JORDAN CHILES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **No. CIV-12-341-FHS-SPS** |
| ) | |
| **PONTOTOC COUNTY** ) | |
| **SHERIFF'S DEPARTMENT, et al.,** ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This action is before the court on the defendants' motions to dismiss or for summary judgment, and the court's own motion to consider dismissal of the case as frivolous under 28 U.S.C. § 1915. The court has before it for consideration plaintiff's complaint, the defendants' motions, plaintiff's responses, the defendants' reply, and a special report prepared at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, a former inmate of the Pontotoc County Jail in Ada, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at that facility. The defendants are the Pontotoc County Sheriff's Department, the Pontotoc County Justice Center, the Pontotoc County Board of Trustees, Pontotoc County Sheriff John Christian, Pontotoc County Jail Supervisor Tyler Mackey, and Pontotoc County Jail Administrator Mike Sinnett.[1]

Plaintiff alleges in Count I of the complaint that he donated a kidney at UCLA Hospital on November 18, 2009. When he was arrested on July 13, 2010, his mother contacted the UCLA physicians who advised he needed to have his creatinine levels checked at 6, 12, 18, and 24 months after the surgery. The Pontotoc County Jail staff, however, failed to have the tests performed.

---

[1] Sinnett is listed as "Mike Dasinett" in the complaint.

In Count II plaintiff alleges that from July 13, 2010, to April 17, 2012, Defendants Mike Sinnett and Tyler Mackey harassed him and made numerous jokes related to his sexual orientation. He claims in Count III that Defendant Mackey slandered him by telling Inmate Jasmine Morell that he was incarcerated for sexually abusing little boys, which was not true. Defendants Mackey and Sinnett also allegedly targeted sex offenders, homosexuals, and persons with child abuse cases by putting them in pods with other inmates who were told they would receive extra trays, "if they dealt with the situation."

Finally, plaintiff asserts in Count IV that on February 7, 2012, he was transported to Oklahoma County for a court appearance. On February 8, 2012, his $150.00 order from the Pontotoc County Jail canteen was delivered and given to Inmate Henry Miller who was a trustee at the jail. When plaintiff was returned to Pontotoc County approximately two months later, the only ordered canteen items remaining were valued at $39.80. His Request to Staff about the missing canteen items was not answered, and Defendant Sinnett told him he would not be reimbursed.

**State Claims**

Although the complaint is filed pursuant to federal law against the defendants, many of the claims appear to be state law claims, such as medical neglect (Count I), verbal harassment (Count II), slander (Count III), and theft or conversion (Count IV). Rule 17(b)(3) of the Federal Rules of Civil Procedure provides that a party's capacity to be sued is determined "by the state where the court is located . . . ." Therefore, Oklahoma authority would apply when considering whether plaintiff has named a proper party defendant.

The Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51 § 151, (OGTCA), is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity in tort. *Fuller v. Odom*, 741 P.2d 449, 451-53 (Okla. 1987). In the OGTCA, Okla. Stat. tit. 51, § 152.1(A), the legislature adopted and reaffirmed sovereign immunity for the State, its political subdivisions, and all employees acting within the scope of their employment. This immunity is subject to a limited waiver to the extent and the

2

manner specifically provided by the provisions of the other sections of the Act. Okla. Stat. tit. 51, § 152.1(B).

Under the OGTCA, the only proper governmental party to any of plaintiff's purported tort claims would be Pontotoc County. Okla. Stat. tit. 51, § 163(C). The right to sue a county in the State of Oklahoma is purely statutory, and the mode prescribed by statute for prosecuting actions against a county must be strictly followed. *Smith v. State*, 166 P. 463 (1917). The statutory procedure for naming a county as a defendant is found at Okla. Stat. tit. 19, § 4, which specifically provides, "In all suits . . . against a County, the name in which a County shall . . . be sued shall be, 'Board of County Commissioners of the County of _____.'" The Supreme Court of Oklahoma continually has stated, "[t]his statute is mandatory and requires that all suits prosecuted by or against a county be prosecuted in the name of the board of county commissioners of the county in interest." *Green Construction Co. v. Okla. County*, 50 P.2d 625, 627 (Okla. 1935). Therefore, the Board of County Commissioners of the County of Pontotoc would be the only properly-named party for any tort claims asserted by plaintiff under the OGTCA.

Even if plaintiff had named the Board as a proper party defendant, any purported tort claims against it necessarily must fail, because the Board is immune from suit for such claims. The OGTCA provides immunity from suit arising from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility . . . ." Okla. Stat. tit. 51, § 155(25). Further, "[t]he exemption from tort liability as provided in Section 155(24)[2] is all inclusive for tort claims." *Gibson v. Copeland*, 13 P.3d 989, 992 (Okla. Ct. App. 2000) (citing *Medina v. State*, 871 P.2d 1379 (Okla. 1993)); *see also Horton v. State*, 915 P.2d 352, 354 (Okla. 1996) (noting that the state and its political subdivisions are "immune from tort liability to inmates under § 155(24) for the infinite numbers of activities that are involved in prison operations"). According to *Medin*a and its progeny, the exemption applies to preserve

---

[2] Section 155(24) has been recodified as Section 155(25), effective November 1, 2012.

sovereign immunity against practically any loss or injury, whether to an inmate or other person, resulting from practically any act undertaken in the operation of a jail. *See Medina*, 871 P.2d at 1383 n.13.  In fact, § 155(25) may be read so broadly as to mean jail staff "are expressly immunized from liability while acting within the scope of their employment." *Washington v. Barry*, 55 P.3d 1036, 1039 (Okla. 2002).  Because any purported tort claims by plaintiff would necessarily arise in the context of his incarceration in the Pontotoc County Jail, the claims would fall within the exemption, and the Board would be immune pursuant to Okla. Stat. tit. 51, § 155(25).

Furthermore, Defendants Christian, Mackey, and Sinnett are immune from suit as individual county officers, pursuant to § 163(C) of the OGTCA:

> Suits instituted pursuant to the provisions of this act shall name as defendant the state or political subdivision against which liability is sought to be established.  *In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . .*

*Id*. (emphasis added).  Therefore, the tort claims against these defendants in their individual capacities are barred by the OGTCA.

**Federal Claims**

The defendants allege plaintiff's claims pursuant to 42 U.S.C. § 1983 also must fail. The court has carefully reviewed the record and construes  plaintiff's pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972).  This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

*Count I*

Plaintiff claims the defendants failed to provide necessary medical testing related to his kidney donation.  According to the special report, on December 10, 2010, plaintiff complained of pain in his side/back area, and he was transported to the local hospital's emergency room, because of his medical history.  The hospital staff determined there were no serious medical issues with plaintiff's kidney, so he was returned to the jail.  He again was

4

transported to the local hospital on July 19, 2011, specifically to check his creatinine level. Again, no problems were found, and his creatinine level was within the normal range. Approximately one year later, after plaintiff was transferred to the custody of the Oklahoma Department of Corrections, his creatinine level was checked by DOC medical staff. Again, it was within the normal range.

Pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment's proscription against cruel and unusual punishment. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir.1999). Under the due process clause, detainees are "entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997) (citing *Martin v. Bd. Of Comm'rs of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990)). To prevail a plaintiff must show that jailers exhibited deliberate indifference to the detainee's known and serious medical needs. *Id*. at 867.

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

With this standard in mind the court is of the view that the acts complained of do not show deliberate indifference to plaintiff's medical needs as alleged. It is clear from the record that medical care was provided. Where there is such evidence of a "series of sick calls, examinations, [and] diagnoses, . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). To the extent plaintiff is complaining of a delay in his treatment, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate

5

indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). The court finds this claim has no merit.

### *Counts II and III*

The defendants assert plaintiff's claims of verbal harassment and slander do not state a cognizable claim under 42 U.S. C. § 1983. Simple defamation by a state official is not sufficient to support a § 1983 claim, and harm to reputation does not implicate deprivation of a liberty or property interest under the Constitution. *Paul v. Davis*, 424 U.S. 693, 712 (1976). Further, a claim of slander is not cognizable under § 1983. *Cotton v. Simmons*, 23 F. Appx. 994, 2002 WL 93142 (10th Cir. 2002) (unpublished).

### *Count IV*

Finally, plaintiff's "theft" claim also does not assert a cognizable constitutional claim. To state a § 1983 claim based on the deprivation of property, plaintiff must show he had a constitutionally protected interest in the property. *See Harmon v. Cradduck*, 286 P.3d 643 651(Okla. 2013) (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). Plaintiff has not made this showing.

### *Conclusion*

Based on the foregoing reasons the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals consistently has held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** this action is, in all respects, DISMISSED in its entirety as frivolous, pursuant to 28 U.S.C. § 1915(e)(2). This dismissal shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g).

DATED this 30th day of September, 2013.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma